LYNCH, Respondent, vs. NORTHERN PACIFIC RAILROAD COMPANY, Appellant.

*February 3 — February 21, 1893.*

*Railroads: Injury to horses on track: Gross negligence: Proximate cause.*

1. Plaintiff's horses ran along a highway nearly parallel to defendant's track, upon which was a passenger train going in the same direction, until they reached a crossing, where one of them was struck by the engine and injured. The evidence — showing, among other things, that the horses might have turned from the highway into an open field before reaching the crossing; that the engineer blew the alarm whistle to scare the horses from the track; and that he applied the air brake so that the train stopped with the engine on the crossing where it struck the horse — is *held* not to sustain a finding by the jury that the engineer was guilty of gross negligence.

2. Another of the horses, being frightened by the train, jumped over the cattle guard at the crossing and ran along the track until he got entangled in a bridge and was injured. *Held*, that such fright could not be regarded as the proximate cause of the injury, nor a basis of recovery.

APPEAL from the Circuit Court for *St. Croix* County.

Counsel for the plaintiff states the facts, to the effect that the defendant's railway runs southeasterly from the depot in New Richmond for a distance of about one hundred rods to a point fourteen rods north of a main traveled public highway running east and west; that said railway at that point curves and runs nearly east and nearly parallel

with said highway for a distance of about sixty-five rods, where it crosses the same at a very acute angle; that the plaintiff resided on the north side of said highway, and about sixty-five rods west of said crossing; that his horses were in a small barnyard partially inclosed with a fence, near his house, April 23, 1891; that just as the defendant's easterly bound passenger train pulled out from New Richmond about 3 o'clock in the afternoon of that day, and reached the point near or directly north of said barnyard, said horses ran out of the yard south across the highway into the yard of a neighbor, and then turned around and came back into said highway, where the train was directly north of them, and then started and ran easterly along said highway towards said crossing, at a rate of speed about equal to that with which the train was moving; that they reached the crossing just in advance of the engine, when one horse was struck just as he was leaving the track after having crossed it, and was rendered useless by the blow; that the other jumped the cattle guard, and proceeded up the track, in advance of the engine, about a mile, to a bridge, in which he became entangled, and received injuries in consequence; that the highway from the plaintiff's residence to said crossing was not fenced on the north side thereof, but was on the south side from a point opposite the plaintiff's residence to a point about half way to said crossing.

The plaintiff commenced this action in justice's court for the damages to said horses, on the alleged ground of the defendant's negligence. The defendant answered, and upon the trial in that court the plaintiff recovered judgment, from which the defendant appealed to the circuit court, and at the close of the trial in the circuit court the jury returned a special verdict to the effect (1) that the plaintiff was the owner of the horses injured and killed; (2) that he suffered damage by reason of the injury to the one horse, so that it

was killed, to the amount of $150; (3) that he suffered damage to the other horse, injured at the bridge, in the sum of $50; (4) that at the time of the accident the horses were by accident in the highway near the crossing, and without the fault of the plaintiff; (5) that the defendant's engineer in charge of the train was guilty of gross negligence, causing the death of the plaintiff's horse; (7) that such negligence consisted in not stopping the train before it came onto the crossing, as he testified he might have done; (8) that such gross negligence was the proximate cause of the injury to the horse injured at the bridge; (9) that said engineer was guilty of ordinary negligence, which was the proximate cause of the injury to the horse injured at the bridge; (10) that the engineer was guilty of gross negligence in not stopping the train before it came on the crossing; (11) that such engineer did not wilfully or maliciously or intentionally kill or injure the plaintiff's horses or either of them.    The court thereupon ordered judgment in favor of the plaintiff upon such special verdict, and judgment was thereupon entered accordingly, in favor of the plaintiff and against the defendant, for $200 damages and costs.    From that judgment the defendant appeals.

For the appellant the cause was submitted on the brief of *D. S. Wegg* and *Thos. H. Gill.*

*H. H. Smith,* for the respondent.

CASSODAY, J.    The train consisted of engine, tender, baggage car, mail car, and five coaches.    The engineer testified that his running time between New Richmond and Jewett's Mills — a distance of five miles and a fraction over — was ten minutes; that at the time in question his train was late, and hence he was running between thirty and thirty-five miles an hour.    The plaintiff's witnesses give it as their opinion that the train was running from ten to fifteen miles per hour — the most of them fixing it

at fifteen. They also testified to the effect that the engineer applied the air brake so far from the crossing that the speed of the train was perceptibly slackened at a point thirty to thirty-five rods west of the crossing; that the train then increased its speed to about its former rate, and continued that rate until just previous to the time of reaching the crossing, when it slackened up so as to come to a complete stop on the crossing, near where it struck the hind horse and broke his leg. The engineer testified to the effect that he first saw the horses after he had blown the whistle for the crossing, just *after* passing the plaintiff's house; that they were then in the field, capering around; that he did not pay much attention to them for that reason, until he saw they were determined to go down the road and across the track ahead of the train, and then he opened the cock and blew the stock alarm whistle, and tried to scare them off, and when he saw he could not do so, he applied the air brake, and did not release it until the engine came to a dead stop on the crossing. The plaintiff and the three of his witnesses seemingly most relied upon were at the time of the accident from 135 to 150 rods west of the crossing, and much of their testimony was necessarily a matter of opinion. The other two of them were from thirty-five to forty rods northerly or northwesterly from the crossing, and of course their testimony is more reliable, but they do not differ very materially from the engineer and the defendant's other witnesses. The engineer may well have supposed that the horses would finally pass into the open field south of the highway, instead of attempting to cross the track at such an acute angle and immediately in front of the engine. Of course he could not know whether they would turn into the open field or continue on the highway, until they got quite near the crossing. That he tried to avoid injuring the horses is manifest from the fact that the train came to a dead stop just as the en-

gine reached the crossing where it struck the hind horse and broke his leg.

Viewing the evidence in the most favorable light for the plaintiff, still we are constrained to hold that there is no sufficient evidence in the record to sustain the findings that the engineer was guilty of gross negligence. In fact the jury expressly exculpated him from wilfully, maliciously, or intentionally injuring either of the horses. The evidence is less favorable to the plaintiff than in *Jones v. C., M. & St. P. R. Co.* 77 Wis. 585. There is no evidence of such rashness or wantonness in his conduct as to constitute gross negligence. He certainly was authorized to exercise some discretion in the choice of the different courses of action open before him. *Schultz v. C. & N. W. R. Co.* 44 Wis. 638; *Gumz v. C., St. P. & M. R. Co.* 52 Wis. 679; *Berg v. Milwaukee,* 83 Wis. 599.

As to the other horse, which ran ahead along the right of way for nearly a mile, and then got tangled in the bridge, there is no pretense that he was touched by the train at all. He got onto the right of way from the highway by jumping over the cattle guards, and the only finding of negligence in respect to that horse is that the engineer failed to stop the train before it came onto the crossing; in other words, the only ground for recovery as to that horse is that the train frightened the horse, and he ran and got tangled in the bridge, and was thereby injured. Such mere fright cannot, however, be properly regarded as the proximate cause of the injury, nor a basis of recovery.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.